Good morning, everyone. We're ready to proceed, and you may have noticed we have a guest with us this morning. We're very happy to welcome to our court Judge DiGiulio, a very distinguished jurist, and we're happy that he's part of the team this morning. Thank you, Judge Williams. So we'll proceed to the first case, Groshek v. Time Warner. Mr. Modell. Please, the court. Good morning, Your Honors. Counsel. My name is Mike Modell. I represent Mr. Groshek along with Heath Strzoka. This is a consolidated appeal. There's a case that came from the Western District of Wisconsin, which is the Great Lakes case, and a second from the Eastern District of Wisconsin, which is the Time Warner case. They got here on a little bit different routes. The Great Lakes case, while the Spokio case was pending before the Supreme Court of the United States, the party settled that case on a class-wide basis, executed all the settlement documents. The district court gave preliminary approval to the settlement, and shortly before final approval, there was a motion filed after a change of counsel to dismiss based on standings which the district court granted. The Time Warner case, subsequent to the Supreme Court's issuance of its decision in Spokio, Time Warner filed a motion to dismiss based on standing grounds which the district court granted. And these two cases were appealed and consolidated here. What we're asking for relief from this court is as to Great Lakes to reverse and find that they're standing and remand the case back for final approval hearing, for Time Warner to reverse and remand the case back to the district court for the Eastern District of Wisconsin for further proceedings. The issue in the case is whether Mr. Groshek has standing to proceed, given that a defendant put a prospective release of claims into its required mandatory disclosure document under the FCRA. And so if you could speak to his injury, what I'm trying to understand is how he suffered an invasion of privacy when he doesn't allege that he misunderstood the disclosure or would not have given consent had the liability waiver not been a part of the disclosure. Certainly, Your Honor. As a starting point, the Supreme Court has recognized that there are situations, including the Spokio court, where the violation by itself is adequate to confer standing. And we believe this is exactly that sort of situation. This is a case where in the disclosure document. There has to be a problem for him? What did he lose? Well, Judge, several things. First, Mr. Groshek, because this release was in the document, had the potential that he would not protect his rights. So the potential is what you're talking about, not an actual hurt? Well, it's difficult, Your Honor, because obviously in the situation where someone has waived their rights or believed they've waived their rights and now files an action, if nobody filed an action, a defendant would be able to continue to violate those rights. There would be nobody who would have standing in that circumstance. But here there's no allegation that additional information caused him to not understand the consent, no allegation that he wouldn't have provided consent but for the extraneous information on the form, no allegation that additional information caused him to fail to investigate or to take advantage of the FCR rights. And I don't see what's so extraordinary about this case that an injury can't be at least pled or shown. And that seems the preliminary issue is that while you argue three different injuries in your briefing, you didn't allege any of them in your complaint. So haven't you waived those? Well, I don't think so, Your Honor. When you look at Rule 8, Rule 8 says here's what the pleading requirements are. We have to plead subject matter jurisdiction, which was done. You have to plead that there's a claim, which was done. And you have to plead what the relief is you're seeking, which was done. The Spokio case suggested that perhaps in pleading you need to do something more than that. You need to plead the basis for standing. And I would say to the court, if that's in fact what the rule was going to be, that we would file amended pleading and we would do that. We would plead, number one, that this was a situation where a prospective release of claims that Congress, claims that rights that Congress gave, that that prospective release is adequate by itself. We would plead that this is not under Spokio a bare violation of rights, procedural violation, that this is when you're asking somebody to release their substantive rights, that that certainly meets that criteria. So we would plead what's necessary if pleading is, in fact, required. And what injury, as has been asked, was realized? Because you're saying there was a procedural violation of sorts because the waiver was included on the same page of the document. What injury did you suffer as a result of that? Sure. Well, the waiver, it's more than that. It was simply included on the same page. It was, in fact, having somebody, and in this case with Time Warner, 50-some thousand people, waive their rights prospectively, where the U.S. Supreme Court has said that cannot be done. The U.S. Supreme Court has recognized that that's an injury for the last 70 years. From the O'Neill case, which was a- But what injury did he realize as a result? Sure. Your Honor, I would say he had several injuries. Number one is the FCRA specifically says that, employer, you cannot obtain a consumer report on an individual. Yeah, but see, we're giving you that. We're giving you that there is a violation, or let us assume, I'm not saying we're giving, but let us assume there's a violation. The problem is the injury. Right. Well, the injury is that an employer is not permitted to obtain that report. No, no, no. The reason is because of privacy. That's an admonition, not an injury. What did he lose? Right. The injury, though, that flows from that is a privacy injury, right, because now the employer, unlike the two cases this court decided, the Gubula case and the Myers case, where the court said no information was ever provided to a third party, here the information was provided to a third party unlawfully. And so there is an injury, a privacy injury, and there's an injury from an informational point of view has been recognized by the courts. Did the waiver confuse him in terms of understanding that he was disclosing his information to the prospective employer? I don't know. What impact did the waiver have? Yeah, I don't know that that's in the record, Your Honor. I would tell you that for pleading purposes, we would plead what he would say that's factually the case. So that's not in the record, and I don't want to guess at that. But it's certainly the case that giving a person not trained in the law a waiver, saying you're waiving your rights under the FCRA, in the very document that's supposed to inform individuals that you have, here's the employer may be obtaining a copy of your consumer report and the private information in that report. That document is what should tip people off to exercise their rights and get a copy of their report. Here what it is is that document says don't waste your time because you have waived those rights prospectively. So I think so. But what impact did that have? I mean, he fully intended to allow this disclosure to occur, right? So it didn't confuse him or impact the ultimate disclosure that occurred. Well, he needed a job, right? I mean, he applied for a job. He needed a job, or was he just trolling for a lawsuit? He needed a job, and he accepted a job with Time Warner and worked in that job for three months. So it's not a situation trolling. But I would say, Your Honor, even in the circumstance where there is trolling, as I think you're using that word, the Havens Court, Havens Relative, the U.S. Supreme Court said with testers, which would be very similar to what we're talking about here, that they have standing. And the court looked at, in the Havens case, looked specifically at what does the statute say? And the statute said that all persons had a right to not have these misrepresentations as to race made as they were getting housing. In this case, the Fair Credit Reporting Act, the provision that we're talking about, 1681B.B.2.A., also says that a person may not procure a consumer report or cause a consumer report to be procured for employment purposes with respect to any consumer. And then it has a requirement that it must consist solely of that document. So Mr. Groshek is not dissimilar to the testers from a trolling point of view, that the Supreme Court has recognized that those individuals do have standing. I guess as I see it, Your Honors, the question for you is where do you draw the line for standing? We've drawn the line in a couple of other cases, but under 1681B.B.2.A., where do we draw that line? And I would say the Ninth Circuit drew the line under the very same provision with this very same set of circumstances having a prospective release of claims and drew that line such that they found that there was standing and there's not a reason for this court to do otherwise. I would also say that two things the Supreme Court has already assisted the Courts of Appeals in where do you draw that line. Where there's a prospective waiver of substantive rights. We know in the two employment cases that got to the U.S. Supreme Court, those are the O'Neill case, which involved the Fair Labor Standards Act, and the Alexander case, which involved Title VII. In both of those cases, the court ruled prospective waivers are not permitted. And the reason is because it's easy to see what that injury would be. The injury would be that people would not exercise their rights. In the Rodriguez case, which we provided to the court in our appendix, the judge in that case walked through the various studies that, in fact, substantiated people not exercising their rights when they felt that they had potentially waived those rights. So we believe that the Supreme Court has helped us draw that line where we have prospective waivers of substantive rights. Do you suggest that this waiver chilled any intention that he would have had to challenge the disclosure? It may have, but the fact is he brought the lawsuit. So it's difficult to ultimately say that, but, again, the concern is if we're going to look at whether the person who brings the lawsuit had their rights, in fact, chilled, nobody could ever bring one of these cases because there never would be You want to save some time for rebuttal? I do, thank you. All right. Mr. Osmer? Thank you, Your Honor. May it please the Court. Joseph Osmer, representing the Time Warner Cable defendants, and with me this morning is Kevin St. John, who represents Great Lake Higher Education. I'll be arguing this appeal on behalf of both appellees and this consolidated appeal. The main point that we would have is that if these arguments of the appellants are suggested, it swallows Spokio whole, because what he's arguing about is conjectural, hypothetical injuries that might occur. Abstractions. Excuse me, Your Honor? Abstractions. Yes, sir, that might occur to some hypothetical third party, not injuries that he has pled himself. Concrete injury in fact is required, I believe. Yes, Your Honor. He must plead and show a concrete injury in fact. His pleading is devoid of anything of that nature as to him, which is why both his briefs and arguments to the court don't discuss his complaint. They discuss hypothetical, conjectural injuries to supposed third parties. You could make arguments like that, conjure up, manufacture arguments about any statutory violation if you were allowed to make these hypothetical, conjectural arguments, which is exactly what Spokio says you can't do. You must have an injury to yourself, the plaintiff himself, that actually exists. And then how do you distinguish that Syed case? Counsel's relying a lot on that Ninth Circuit case. Yes, Your Honor. Syed recently came out and a couple of things I would like to say about Syed. First of all, background, as the court may know, Syed was not, the issue of standing was not briefed in Syed. It was not even a focus at oral argument. Syed went up on appeal on the willfulness issue. For whatever reason, the Ninth Circuit did not seek supplemental briefing post Spokio and issued a one-paragraph, six-sentence opinion on standing. With due respect to the Ninth Circuit, it's very cursory and rudimentary analysis. And what those six sentences boil down to, Your Honor, is that Congress passed a statute, the SCRA. It created a right in the statute to a stand-alone disclosure, and when that right is violated, there's necessarily a concrete injury. Respectfully, that is exactly what Spokio says you cannot do. That is exactly the analysis that Spokio sent back to the Ninth Circuit because it is an insufficient analysis. Those six sentences don't discuss anything about how you get any type of concrete injury, and it completely ignores the central teaching of Spokio that even in the context of a statutory violation, you must show a concrete injury. The Ninth Circuit completely blew past that, and this court has already in both Myers and Gubala said that the Supreme Court meant what it said about having to show a concrete injury even in the context of a statutory violation. Is there any more to your argument? Those are the highlights, Your Honor, but I would like to point out a few additional things. Go ahead. Could I ask before you proceed? Yes, Your Honor. Should we regard this as a facial challenge or a factual challenge? Your Honor, it is up here on a facial challenge. Both Time Warner and Great Lakes made a facial challenge. Now, in the Time Warner case, that case had proceeded far enough. We had taken Mr. Groshek's deposition. So in our briefing in the district court, we also made a factual challenge.  And this is important because it goes to what they said that they would plead on remand, and I would like if it was remand, and I'd like to discuss that for a moment. But in his deposition, he admitted that before he ever came into contact with either one of these defendants, even though he was only deposed in the Time Warner Cable case, he admitted that he had educated himself on his FCRA rights. He'd met with an attorney to learn about his FCRA rights and then spent north of 20 hours researching and looking into the FCRA so that he could start this FCRA claims business that Time Warner Cable and Great Lakes both became unwittingly part of. He admitted that when he saw the forms in the Time Warner Cable case, that he understood the disclosure. He understood that Time Warner Cable would be obtaining his consumer report, and he intended for them to do so when he filled out the consent forms. Those admissions, while they occurred in the Time Warner Cable case, were broad enough to cover the Great Lakes case as well because they speak to this FCRA business he was running and what he knew and what he understood before he ever came into contact with either defendant. So while they're talking about what they would plead if you sent this back and required the district court to allow him to have another shot at it, they can't plead what has to be pled here. And when we're talking about the disclosure requirement, and I would like to focus the court that that's what this case is about. What he pled in the district court is a violation of the standalone disclosure requirements in both cases. Sure, the complaints do mention the waiver, but it only mentions it as an example of extraneous information that violates the standalone disclosure requirement. Let me ask you this. Could a liability release, if included in the disclosure, confuse a job applicant about his right to refuse access to his consumer report? No, Your Honor. I don't believe so. And importantly, Mr. Groshek does not allege that here, and he cannot allege that here given the admissions that he's already given. Under Rule 11, he would not be able to make an allegation like that. Do you agree that the inclusion of the liability relief in the disclosure is a violation of FCRA? I agree that it would pass 12b-6 and may state a claim. I won't per se agree because there are some courts out there that have held that it is not, or that it at least is not a willful violation such that would allow recovery of statutory damages. But I would point out that the case was about standalone disclosure. The briefings below were about standalone disclosure and the waiver being a violation of standalone disclosure, but not all of these harms that he claims stem from the waiver itself. The appeal seems to be about a completely separate argument that wasn't briefed in the district court, and we've raised a waiver issue there which we'll stand on our papers for, but now they're arguing that just the waiver in and of itself is a completely separate harm. Congress hasn't said that. There is not a provision in the FCRA that says waivers are bad and a waiver is a per se violation of the FCRA, and there is a cause of action for that. But that seems to be what the appeal has morphed into, is them trying to argue there's an independent cause of action based on the waiver. If Congress wants to do that, they can, but they haven't. The case law that they discuss about waivers in the Supreme Court and for years holding waivers illegal, all those cases say is that waivers of statutory rights are not enforceable. They don't provide a cause of action for including them in an FCRA disclosure form or anywhere else. Any additional questions? Thank you very much, Your Honors, and I appreciate your time this morning. Thank you, Counsel. Three minutes. Thank you. Just a couple matters. First, as to the statements about the timing of what Mr. Groshek knew when, Mr. Groshek applied in February of 2014 for a position at Great Lakes. That's what the evidence is. And in his deposition, his testimony was that in February of 2014, that's the first time he went to a lawyer, learned about rights under the FCRA. He didn't have this knowledge that's being suggested. Second, with Time Warner, he applied in September of 2014. And whether he spent 20 hours educating himself, Congress hasn't said that somebody who looks into their rights and educates themselves on their rights doesn't have standing. The Syed case didn't do what Spokio said should not be done. The Syed case specifically addressed what the concrete harm was, and it said as to two pieces. One, as to the actual disclosure, it violated informational injury inside authority, including U.S. Supreme Court authority. As to the authorization, it said it violated the right to privacy, a specific right that's been recognized. The Spokio court set the standards at the line by saying if it's a bare procedural violation, and it gave an example of what that means. There's a zip code that's incorrect. That's a bare procedural violation. That doesn't give rise to standing. Here, that's not the case. Here there is a specific law that Congress passed that said you have to give this simple disclosure. It has to consist solely of one sentence. The one sentence is that the employer may obtain a consumer report for employment purposes. And here that's not what we have. Here we have not only the unlawful release, but we also have, in the Time Warner case, four pages of information as part of that disclosure document. That is not a bare procedural violation. Asking somebody to release their rights prospectively under a law, in no circumstance, can be a bare procedural violation. That's all I have. All right. Thank you, counsel. Thank you. Thank you to both counsel. We'll take the case under advisement. I'll call the second case.